NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DEE MONBO,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2025-1489

---

Appeal from the United States Court of Federal Claims in No. 1:24-cv-01368-CNL, Judge Carolyn N. Lerner.

---

Decided:  May 15, 2026

---

DEE MONBO, Owings Mills, MD, pro se.

KRISTIN ELAINE OLSON, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by STEVEN JOHN GILLINGHAM, PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before PROST, SCHALL, and STOLL, *Circuit Judges*.

PER CURIAM.

Dee Monbo appeals the United States Court of Federal Claims' order (1) dismissing her bid protest complaint under Court of Federal Claims Rules 41(b), 12(b)(1), and 12(b)(6); (2) denying her motion to amend her complaint; and (3) denying her motions to stay the proceeding. For the reasons explained below, we affirm.

## BACKGROUND

Ms. Monbo is the owner and president of Monbo Group International, Ltd. MGI is registered in the federal government's System for Award Management (SAM) and has the unique entity ID FKYVCHTRAMU8 in that system. Ms. Monbo also holds a sole proprietorship registered under her name that has the unique entity ID XQ6KZY77S5F8 in SAM. Ms. Monbo alleges "that her sole proprietorship and corporation are 'two separate federal contractors operating together for a common goal' under a 'joint collaboration agreement.'" SAppx 2[1] (citation omitted).[2]

On June 15, 2023, the General Services Administration issued Request for Proposal No. 47QRCA23001, soliciting a variety of services for the One Acquisition Solution for Integrated Services Plus small business program. Ms. Monbo "claims that her sole proprietorship and her corporation submitted a joint proposal in accordance with

---

[1]    "SAppx" refers to the Supplemental Appendix filed with the Government's Informal Brief. *See* ECF No. 32.

[2]    "[A] document titled 'Joint Collaboration Agreement Between Monbo Group International, LTD and Dee Monbo (A Sole Proprietor),'" was part of the Amended Complaint record, but "the document purport[ing] to record an agreement . . . includes only the first and fifth pages, and all substantive language is redacted." SAppx 2 (citation omitted).

the solicitation's instructions on October 20, 2023." SAppx 4 (citation omitted). On July 30, 2024, GSA emailed an "Unsuccessful Offeror Notification" letter—with both the email and the letter addressed only to "Monbo Group International, LTD–FKYVCHTRAMU8"—explaining that MGI's proposal "did not include sufficient past performance information" and that it had been eliminated from consideration. *Id.* (citation omitted). Ms. Monbo responded to the letter multiple times from her email address "dmonbo@monbogroup.com" and used the signature "Dee Monbo, CPA, MBA, Monbo Group International." *Id.* (citation omitted). On August 20, 2024, GSA sent an updated letter, again addressed only to MGI and describing MGI as the "Offeror." *Id.* (citation omitted). The updated letter contained the same information as the first letter and added that MGI and Ms. Monbo had been debarred, which was an additional ground for disqualification.[3]

Ms. Monbo filed suit in the Court of Federal Claims on September 9, 2024. In her Amended Complaint, Ms. Monbo alleged that (1) "she has Article III standing and statutory standing as an 'interested party' under [28 U.S.C.] § 1491(b)(1) because her 'joint proposal' with MGI makes her an 'actual bidder'"; (2) "her proposal contained the requisite past performance information"; and (3) but for GSA's "erroneous past performance decision, her joint proposal with MGI 'would have been awarded the

---

[3]    SAM "'contains exclusion records' of 'the entities debarred, suspended, [and] proposed for debarment' from federal contracting pursuant to Federal Acquisition Regulation ('FAR') Subpart 9.4." SAppx 3 (alteration in original) (quoting FAR § 9.404). "[B]oth MGI and the Dee Monbo sole proprietorship are subject to active exclusions from federal contracting as a result of unrelated proceedings conducted by the Department of the Navy." *Id.* (citation omitted).

contract.'"  SAppx 5 (citation omitted).  Ms. Monbo re-quested that the Court of Federal Claims "set aside [GSA]'s finding on the past performance question"; she did not re-quest that the court "review her debarment or contest MGI's disqualification on those grounds." *Id.*

On September 19, 2024, the Court of Federal Claims held a status conference where it informed Ms. Monbo that, under Court of Federal Claims Rule 83.1(a)(3), corpora-tions must be represented by counsel and cannot be repre-sented by a pro se litigant.  The Court of Federal Claims gave Ms. Monbo an opportunity to seek counsel for MGI, which she did not do.

In November 2024, the Government moved to dismiss Ms. Monbo's Amended Complaint under Court of Federal Claims Rules 41(b), 12(b)(1), and 12(b)(6).  Ms. Monbo re-quested three extensions of time to respond to the motion, each of which the Court of Federal Claims granted.  Ms. Monbo did not file a response to the motion; instead, she filed (1) a request to suspend her response date to the Government's motion, which did not include an explana-tion; and (2) a motion to stay the proceeding pending reso-lution of a separate case in the United States District Court for the District of Columbia challenging her debarment. The Court of Federal Claims denied her request to suspend the response date and ordered her to respond to the Gov-ernment's motion to dismiss by January 21, 2025.  Instead of filing a response by the ordered date, Ms. Monbo filed a second motion to stay on February 7, 2025, an identical third motion to stay on February 11, 2025, and a motion to amend her complaint for a second time under Court of Fed-eral Claims Rule 15(a)(2), also on February 11, 2025.

In December 2025, the Court of Federal Claims granted the Government's motion to dismiss and denied Ms. Monbo's stay motions and motion to amend.  Regard-ing the Government's motion to dismiss, the Court of Fed-eral Claims first explained that, while "Ms. Monbo claims

this suit is brought on her own behalf, the facts[, as assessed under Rule 12(b)(1),] instead indicate she seeks to prosecute claims on behalf of MGI." SAppx 9. However, Ms. Monbo is not an attorney, and under Rule 83.1(a)(3), "[a]n individual who is not an attorney may represent oneself or a member of one's immediate family, but may not represent a corporation, an entity, or any other person." As Ms. Monbo had multiple opportunities to obtain counsel and did not do so, the Court of Federal Claims held that, "insofar as the [Amended] Complaint alleges MGI's claims, it must be dismissed pursuant to Rule 41(b)." SAppx 11 (cleaned up) (citation omitted); *see also* RCFC 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, the court may dismiss on its own motion or the defendant may move to dismiss the action or any claim against it.").

The Court of Federal Claims then went on to consider Ms. Monbo's allegations on behalf of her sole proprietorship, finding that any such allegations fail for both lack of Article III standing and lack of statutory standing under § 1491(b)(1). For Article III standing, the Court of Federal Claims determined that Ms. Monbo could not show an injury-in-fact because the materials attached to her complaint and the Government's motion to dismiss indicated that (1) only MGI was the offeror that GSA rejected, and (2) there were "no facts" to determine that her sole proprietorship's collaboration agreement with MGI led to "economic exposure" for the proprietorship that was "imminent" or more than "conjectural." SAppx 12. Furthermore, the Court of Federal Claims determined that there was no redressability for any purported injury to Ms. Monbo. Even with a favorable decision, neither MGI nor Ms. Monbo could bid or receive a contract from GSA, as both are debarred, and Ms. Monbo did not challenge these debarments at the Court of Federal Claims. As to statutory standing, the Court of Federal Claims determined that Ms. Monbo was not an actual or prospective bidder and did

not have a direct economic interest that would be affected by the award of the contract, as required for standing under § 1491(b)(1).

Regarding Ms. Monbo's motions to stay, the Court of Federal Claims explained that Ms. Monbo is a "sophisticated party" who "has filed eight cases in" the Court of Federal Claims and has not shown that proceeding with both this case and a case at the D.C. District Court "would be a 'hardship or inequity' given the slate of concurrent litigation she has initiated." SAppx 8 (citations omitted). And while Ms. Monbo argued that the D.C. District Court's decision would impact the Court of Federal Claims' decision, the Court of Federal Claims explained "that rationale is unpersuasive because the claims are based on different law," "[a]nd to the extent that [Ms. Monbo] is concerned about losing an opportunity for a bid protest remedy if her debarment challenge is successful, any future impact on her ability to bring a challenge is a result of 'the interplay of statutes regulating federal government procurement.'" *Id.* (citations omitted). Additionally, the Court of Federal Claims noted that it has previously "held that jurisdictional limitations that might prevent challenges to agency action in the future do not present a pressing need for a stay of proceedings." SAppx 9 (cleaned up) (citation omitted). The Court of Federal Claims also explained that this "case is ripe for review on the jurisdictional issues and threshold matters the Government has raised. Further, the [Court of Federal Claims'] disposition of these threshold issues may impact other pending bid protest cases [Ms. Monbo] has filed in this [c]ourt." *Id.*

Regarding Ms. Monbo's motion to amend, the Court of Federal Claims explained that "[a]ll of the factors that caution against granting leave to amend under Rule 15(a)(2) are present here, including undue delay, dilatory motive, and undue burden to the Government." SAppx 17 (citation omitted). Further, Ms. Monbo's "proposed amendments present no new facts, only legal conclusions. And although

it might have been appropriate to present such arguments in a response to the [Government's] [m]otion to [d]ismiss, Ms. Monbo has repeatedly failed to do so despite multiple extensions and [c]ourt orders." *Id.* Finally, the Court of Federal Claims explained that Ms. Monbo's proposed amendments would be futile.

Ms. Monbo appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

Ms. Monbo presents several arguments on appeal: (1) "the Court of Federal Claims' dismissal order is erroneous because the argument that the sole proprietorship named Dee Monbo is not an interested party is barred by the law of the case doctrine[,] . . . the doctrine of res judicata[,] . . . [and] the doctrine of collateral estoppel"; (2) "the Court of Federal Claims' dismissal order is erroneous because the [Government] is judicial estoppel [sic] from arguing that the Court of Federal Claims does not have jurisdiction over bid protest claims brought by the sole proprietorship named Dee Monbo"; (3) "the Court of Federal Claims' dismissal order is erroneous and arbitrary because the Court of Federal Claims prematurely dismissed the bid protest without the Court of Federal Claims ever seeing or reviewing the administrative record"; (4) "the Court of Federal Claims erred in denying [Ms. Monbo's] motion to amend the bid protest complaint pursuant to . . . Rule 15(a)"; (5) "the Court of Federal Claims erred in denying [Ms. Monbo's] motion to stay proceedings pending resolution of the Administrative Procedure Act (APA) complaint in the district court which challenges the arbitrary and capricious debarment"; and (6) "the Court of Federal Claims [should have] transfer[red] the case to the purported appropriate forum pursuant to 28 U.S.C. § 1631." Appellant's Inf. Br. 2–4 (cleaned up) (capitalization normalized). We address each challenge below.

I

We turn first to Ms. Monbo's challenges to the dismissal of her Amended Complaint. We note at the outset that each of these challenges were forfeited by Ms. Monbo based on her failure to respond to the Government's motion to dismiss, and thus she did not properly present these arguments to the trial court. *See Boyd v. United States*, 134 F.4th 1348, 1354 (Fed. Cir. 2025) ("Arguments not raised in the Court of Federal Claims are forfeited."). We are also not persuaded as to the merits of her challenges.

A

The Court of Federal Claims found that Ms. Monbo brought claims on behalf of MGI and dismissed those claims under Rule 41(b). Under Rule 41(b), the Court of Federal Claims may dismiss a case "[i]f the plaintiff fails to prosecute or to comply with the[ court's] rules or a court order." We apply an abuse of discretion standard in reviewing a court's decision to dismiss for failure to prosecute or comply with court orders under Rule 41(b). *Claude E. Atkins Enters., Inc. v. United States*, 899 F.2d 1180, 1183 (Fed. Cir. 1990). An abuse of discretion occurs when a court "made a clear error of judgment . . . or exercised its discretion based on an error of law or clearly erroneous fact finding." *Qingdao Taifa Grp. Co. v. United States*, 581 F.3d 1375, 1379 (Fed. Cir. 2009) (citation omitted).

The Court of Federal Claims did not abuse its discretion by dismissing Ms. Monbo's allegations as to MGI under Rule 41(b). Ms. Monbo did not comply with the trial court's clear and unambiguous orders. Ms. Monbo was warned that under Rule 83.1(a)(3), counsel was needed to represent MGI. She did not find such counsel. In dismissing her claims under Rule 41(b), the Court of Federal Claims also noted that Ms. Monbo has been involved in at least one other case that was dismissed under Rule 41(b) because she failed to comply with Rule 83.1(a)(3) and did not find counsel for MGI. *See* SAppx 10–11. Additionally,

the Court of Federal Claims relied on Ms. Monbo's failure to respond to the Government's motion to dismiss despite receiving multiple extensions.  On this record, we cannot say that the trial court abused its discretion when Ms. Monbo "repeatedly and without valid justification ignored both court-imposed deadlines and court rules." *Kadin Corp. v. United States*, 782 F.2d 175, 176 (Fed. Cir. 1986).

B

To the extent Ms. Monbo brought claims on behalf of her sole proprietorship, the Court of Federal Claims dismissed those claims for lack of Article III standing among other things.  We review the question of whether a party has Article III standing to sue de novo.  *Associated Energy Grp., LLC v. United States*, 131 F.4th 1312, 1317 (Fed. Cir. 2025).  The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013).  We review any underlying factual findings made by the trial court for clear error.  *Associated Energy*, 131 F.4th at 1317.

"The Court of Federal Claims, though an Article I court, . . . applies the same standing requirements enforced by other federal courts created under Article III."  *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (omission in original) (citation omitted). "Article III standing requires that a plaintiff have: '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Associated Energy*, 131 F.4th at 1318 (citation omitted).  An alleged injury is redressable if it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up) (citation omitted).

We agree with the Court of Federal Claims that "[h]ere, a favorable decision would not redress Ms. Monbo's alleged

harm because both her sole proprietorship and MGI are debarred." SAppx 13. "[E]ven if [GSA]'s past performance analysis erred, 'the outcome of this suit would not affect [Ms. Monbo's] future' profits because MGI is ineligible to receive the contract." *Id.* (quoting *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 541 (2020)). Moreover, even if Ms. Monbo's allegations about her purported collaboration with MGI are true, her separate challenge to her debarment would need to succeed for her to receive any profits. *See id.* (citing FAR § 9.405). And "a decision on her Amended Complaint would not redress this issue because Ms. Monbo d[id] not challenge her or MGI's debarments" in front of the Court of Federal Claims.[4] *Id.* Accordingly, even if Ms. Monbo could

---

[4]    On appeal, Ms. Monbo raises multiple challenges to her debarment that are not properly before this court. *See* Appellant's Inf. Br. 3 (challenging whether (1) the Government "can propose the sole proprietorship . . . for debarment in an attempt to win the challenge to the unlawful contract award"; and (2) "the Court of Federal Claims erred in dismissing the bid protest where the [Government] purported defense of debarment rests entirely upon evidence that is a product of an illegal violation of the Fifth Amendment Due Process Clause and the Debarment Procedures" (capitalization normalized)). Our jurisdiction in this case is limited to final decisions of the Court of Federal Claims, and Ms. Monbo did not challenge her or MGI's debarments in the Court of Federal Claims. *See* 28 U.S.C. § 1295(a)(3) ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction . . . of an appeal from a final decision of the United States Court of Federal Claims."); SAppx 3 ("[Ms. Monbo's] Amended Complaint does not mention the debarments of MGI or her sole proprietorship. Ms. Monbo has since asserted that she is bringing a separate lawsuit to challenge her debarment in the United States District Court for the District of

MONBO v. US                                                    11

show an injury-in-fact sufficient to support Article III standing, she has failed to present a redressable injury.[5]

On appeal, Ms. Monbo argues that the Court of Federal Claims erred in dismissing her case based on several legal principles (i.e., law of the case, res judicata, collateral estoppel, judicial estoppel) all stemming from the idea that she cannot bring a bid protest complaint in a district court. *See* Appellant's Inf. Br. 13–21; *see also* Appx 1[6] (attaching a decision from the D.C. District Court dismissing Ms. Monbo's bid protest over a solicitation from the Air Force). These challenges lack merit. The Court of Federal Claims has exclusive jurisdiction over bid protest complaints. *See* 28 U.S.C. § 1491(b)(1); *PGBA, LLC v. United States*, 389 F.3d 1219, 1227 (Fed. Cir. 2004) ("In 1996,

---

Columbia." (citations omitted)). We will not consider issues not properly before us.

[5] Because we affirm the Court of Federal Claims' holding that, to the extent any claim was brought by Ms. Monbo on behalf of her sole proprietorship, that claim must be dismissed for lack of Article III standing, we do not reach either the Court of Federal Claims' finding that MGI was the real party in interest in this suit (and thus the entire Amended Complaint could be dismissed under Rule 41(b)), or the Court of Federal Claims' holding on lack of statutory standing for the sole proprietorship. We additionally note that, although both parties are asking us to review the Court of Federal Claims' legal holdings and factual findings on jurisdiction based on the complaint and motion to dismiss records, neither side included the Amended Complaint, motion to dismiss, or those documents' exhibits in the appendices submitted to this court. To satisfy ourselves of our duty to review the decision of the trial court, we requested and reviewed these documents.

[6] "Appx" refers to the appendices Ms. Monbo attached to her Informal Brief. *See* ECF No. 26.

however, Congress amended the Tucker Act by enacting [the Administrative Dispute Resolution Act (ADRA)]. In addition to section 1491(b)(4), the amending statute contained a sunset provision which gave the Court of Federal Claims exclusive jurisdiction over bid protests on January 1, 2001." (citation omitted)). Neither the Court of Federal Claims nor the Government were bound by a district court dismissing a different case brought by Ms. Monbo based on this basic principle. Furthermore, merely because the Court of Federal Claims has exclusive jurisdiction over bid protests does not mean that filing a bid protest complaint is enough to bring a case within the subject matter jurisdiction of the court. Here, Ms. Monbo's allegations did not fail because she brought them in the wrong forum but because those allegations did not meet the requirements of Article III standing. And for the same reason—that the Court of Federal Claims has exclusive jurisdiction over bid protest complaints—there was no court to which the Court of Federal Claims could transfer Ms. Monbo's case.

Finally, Ms. Monbo argues that the Court of Federal Claims erred in not waiting to receive the administrative record before dismissing her Amended Complaint. But when considering whether to dismiss for lack of Article III standing, "[a] plaintiff's *complaint* must establish that [s]he has a 'personal stake' in the alleged dispute . . . ." *Associated Energy*, 131 F.4th at 1318 (omission in original) (citation omitted). Accordingly, Ms. Monbo was not entitled to have the Court of Federal Claims review GSA's decision based on the administrative record.

## II

Ms. Monbo also challenges the Court of Federal Claims' decision denying her motion to amend her complaint under Rule 15(a)(2). We review the Court of Federal Claims' denial of a motion to amend a complaint for an abuse of discretion. *Steffen v. United States*, 995 F.3d 1377, 1379 (Fed. Cir. 2021) (citation omitted). Here, in

denying Ms. Monbo's motion, the Court of Federal Claims explained that her request to amend (1) showed "undue delay, dilatory motive," and presented an "undue burden to the Government"; (2) "present[ed] no new facts, only legal conclusions"; and (3) would be futile.  SAppx 17 (citation omitted).  We see no abuse of discretion in this decision on this record.

On appeal, Ms. Monbo states without explanation that her new "Amended Complaint add[ed] new claims, [sic] and new allegations."  Appellant's Inf. Br. 23.  Such conclusory statements without explanation for how the trial court erred in finding that her proposed amendments were "legal conclusions" that "cannot 'withstand a motion to dismiss' and [were] thus futile," do not persuade us that the Court of Federal Claims abused its discretion.  SAppx 17 (citation omitted).  Nor does Ms. Monbo address the Court of Federal Claims' finding that her request to amend was unduly delayed—coming weeks after she failed to respond by the court-ordered deadline to the Government's motion to dismiss—and thus showed dilatory motive and was unduly prejudicial to the Government.[7]

### III

Ms. Monbo further challenges the Court of Federal Claims' decision not to stay this matter pending the outcome of her case in the D.C. District Court.  "When and how

---

[7]    Ms. Monbo also argues that an "amended complaint automatically moots the defendant's motion to dismiss and creates a duty to respond to the amended complaint," and thus, the Government's motion to dismiss here was mooted.  Appellant's Inf. Br. 23.  This argument fails because Ms. Monbo merely moved for leave to amend her complaint for the second time, but this motion was denied and a second amended complaint superseding her operative pleading was not entered into the record.

to stay proceedings is within the sound discretion of the trial court." *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (citation omitted). Here, the Court of Federal Claims explained that Ms. Monbo, someone who has filed many cases at the Court of Federal Claims, had not shown that carrying on concurrent litigation between this case and the D.C. District Court case was burdensome, and had not shown the D.C. District Court case necessarily impacted this matter. The Court of Federal Claims also weighed this against "the need for timely resolution of [Ms. Monbo's] claims." SAppx 9 (citation omitted). We see no abuse of discretion on this record.

On appeal, Ms. Monbo states that GSA's "solicitation, proposed award[,] and award do not comply with procurement statute and regulations[, so she] is likely [to] prevail on the merits of the bid protest," and the Government's "debarment is unlawful and void because the Sole Proprietorship-Plaintiff (Dee Monbo) and MGI's name was [sic] placed on the debarment list in a manner inconsistent with due process." Appellant's Inf. Br. 30 (capitalization normalized). These conclusory statements do not persuade us that the trial court "made a clear error of judgment[,] . . . error of law[,] or clearly erroneous fact finding." *Qingdao*, 581 F.3d at 1379 (citation omitted).

IV

Finally, Ms. Monbo makes several requests for relief that are awarded to prevailing parties or parties who are likely to succeed on the merits of their claims, which Ms. Monbo is not. *See* Appellant's Inf. Br. 3–4 (requesting (1) "[GSA be] required to pay the sole proprietorship's bid and proposal preparation costs"; (2) "the court award fees and protest costs pursuant to the Equal Access to Justice Act"; (3) "preliminary injunctive relief to ensure that [GSA] complies with statutes and regulations"; and (4) "the Court of Federal Claims . . . use[] its common sense to recommend

that [GSA] implement[] any combination of the following remedies to promote compliance with statute and regulation[, including] . . . refrain from exercising options under the contract[,] . . . terminate the contract[,] . . . recompete the contract[, or] . . . issue a new solicitation" (capitalization normalized)). We thus do not consider these requests.

## CONCLUSION

We have considered Ms. Monbo's remaining arguments but find them unpersuasive. For the foregoing reasons, we affirm the Court of Federal Claims' decision dismissing Ms. Monbo's bid protest complaint, denying her motion to amend her complaint, and denying her motions to stay.

## **AFFIRMED**

### COSTS

No costs.